UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MOHAMMED KEITA,                                     :
                                                    :
                          Plaintiff,                :           MEMORANDUM & ORDER
                                                    :
              v.                                    :           17-CV-885 (ENV) (ST)
                                                    :
FEMA, STATE FARM FIRE INSURANCE,                    :
                                                    :
                          Defendants.               :
                                                    :
                                                    :
-------------------------------------------------------------- :
                                                    x

VITALIANO, D.J.

On November 6, 2017, the Court entered an order dismissing *pro se* plaintiff Mohammed
Keita's original complaint in this action, under 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to
file a rule-compliant amended complaint.  Dkt. 23.  He then filed the instant amended complaint,
naming the Federal Emergency Management Agency ("FEMA"), State Farm Fire Insurance
("State Farm"), JPMorgan Chase Bank ("Chase"), Commerce Bank, N.A. ("Commerce"), and
the City of New York (the "City") as defendants.  Am. Compl., Dkt. 25.  On September 6, 2018,
the amended complaint was similarly dismissed.  Dkt. 38.  Sensing the spark of a claim, the
Second Circuit remanded Keita's claims against FEMA and State Farm.  Dkt. 41.  This decision
considers only FEMA's motion to dismiss this action and only as to itself, which, for the
following reasons, is granted in part and denied in part.  A motion for summary judgment by co-
defendant State Farm will be addressed in a separate decision.

1

Background[1]

Plaintiff complains that his dwelling, located at 738 Seaview Avenue on Staten Island (the "Seaview property"), suffered a substantial loss from flooding on April 16, 2007.  Am. Compl. at ¶ 5.  Specifically, Keita claims "[t]he dwelling was over flooded, foundation/retaining walls cracked, flood viod (sic) created on the footing of floor and exposing soil to erosion, black mold, meldew (sic), heating system in basement, hot water system, loss of rental income, and loss of used of over 50% as a two family dwelling." *Id.* (errors in the original).  According to Keita, these losses totaled no less than $500,000.  *Id.*  FEMA and State Farm, as is obvious from the filing of this lawsuit, saw it differently.  In a downward spiral from Keita's loss estimate, as best can be discerned from plaintiff's complaint, State Farm and FEMA recognized the loss at $34,518.60.  *Id.*  Plaintiff alleges, however, that FEMA and State Farm, collectively, approved a loss payment of only $17,259.30, and that he actually received only $8,629.65.  *Id.*  All that is clear in the pleadings from these numbers is that Keita does not believe either FEMA or State Farm paid him for the true value of his loss and, as a result, his first cause of action claims FEMA and State Farm breached their flood and home owner insurance contracts with him and engaged in "fraud and manipulation."  *Id.*  The jumble of numbers Keita provides on this score remains a jumble of numbers.

Racing ahead five years in time, and in a factual non-sequitur, Keita gripes about FEMA's failure to pay a property damage claim in the aftermath of Hurricane Sandy, the super storm that inundated metropolitan New York City and left nearly two dozen dead on Staten

---

[1] The background facts are drawn from the complaint and are difficult to discern, but to the extent that they are comprehensible at all, they are deemed true for purposes of this motion, and all reasonable inferences are drawn in favor of plaintiff.  *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

Island.  Am. Compl. ¶ 6.  As best understood, Keita's grievance rests on FEMA's rejection of his claim under the National Flood Insurance Program ("NFIP") for damage to property that is presumably the Seaview property.  The haggling over that claim would generate a formal letter from Keita's then-attorney to FEMA demanding payment for the Seaview property loss.  *See* Ex. A Letter from Timothy M. Belknap to FEMA dated February 2016, Dkt. 25 at 3.  In further support of his claim against FEMA for the loss, but in derogation of any responsibility by State Farm with respect to that loss, Keita attaches a letter he received from State Farm, dated February 1, 2012, indicating that any NFIP claim or coverage previously under State Farm would be transferred to NFIP Direct, the federal government's flood insurance program, effective February 28, 2012, eight months before Sandy struck.  Ex. B Letter from State Farm to Keita, Dkt. 25 at 4.

Amidst the swirl of charges and counter charges Keita lobs at FEMA, he apparently did receive a disaster award for something, which is revealed, left handedly, by his gripe that FEMA, he says, is "garnishing" his SSI benefits seeking repayment of a $31,000 award it previously had made to him.  Am. Compl. ¶ 6.  Based on Keita's opposition brief, it appears that the award, Keita reveals in opposing this motion, is related to a property located at 863 Father Capodanno Boulevard also on Staten Island (the "Capodanno property").  Pl.'s Opp'n Mem. ¶ 4, Dkt. 68.[2] Lastly, in a totally conclusory catch-all broadside and without a hint of factual support, Keita appears to allege that FEMA and State Farm Insurance engaged in "[d]iscrimination under Stafforf (sic) Act."  Am. Compl. at ¶ 6.

---

[2] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Although a court "must accept as true all material factual allegations in the complaint," it must not draw inferences favorable to the party asserting jurisdiction, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), and it may consider evidence outside the pleadings, *Makarova*, 201 F.3d at 113. Subject matter jurisdiction is a threshold issue, so when a defendant moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002).

In similar fashion, Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims for relief, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 555 U.S. at 557, 127 S.Ct. at 1966). A complaint rooted entirely in

conjecture and speculation is worthless.  *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (noting that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" (internal quotation marks omitted)).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1974).  This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  Then, as noted earlier, when considering a Rule 12(b)(6) motion, a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."  *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

The Court, furthermore, is mindful that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct., 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted).  If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

As the circumstances here permit the Court to resolve this matter on Rule 12 grounds, the Court foregoes any discussion of defendants' alternative strategy to pursue summary judgment.

5

Discussion

1. Programmatic Framework for Disaster Relief

Put in the spotlight by Keita's complaint, the National Flood Insurance Act ("NFIA") was enacted to address the unavailability of flood insurance from private insurers and the necessity for such insurance to address personal hardships and economic distress arising from flooding. *See* 42 U.S.C. § 4001(a). Explicitly, NFIA's purpose is to provide "a reasonable method of sharing the risk of flood losses . . . through a program of flood insurance . . . and . . . making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection." *Id.* Consequently, Congress established the National Flood Insurance Program ("NFIP") to serve this purpose. 42 U.S.C. § 4001(b), (c), (d). Since 1979, responsibility for administering NFIP lies with FEMA under presidential delegation. *See* Exec. Order No. 12127, 44 Fed. Reg. 19,367 (Apr. 3, 1979). In accord with that mandate, FEMA administered the National Flood Insurance Fund ("NFIF"), which includes "cost incurred in the adjustment and payment of any claims for losses." 42 U.S.C. § 4017.

NFIP is administered by the government with private industry assistance. *See* 42 U.S.C. §§ 4071–72. FEMA promulgated several regulations under NFIA to dictate the operation of NFIP, *see* 44 C.F.R. §§ 59–80 (2021), including the Standard Flood Insurance Policy ("SFIP") for a dwelling, *see* 44 C.F.R. § Pt. 61, App. A(1) (2021). In 1983, FEMA created the Write-Your-Own ("WYO") program, authorizing private insurers to issue SFIPs funded by the NFIF. *See* 44 C.F.R. § 62.23 (2021). WYO companies, like State Farm, sell SFIPs under NFIA and relevant regulations. *Id.* They act as FEMA's fiscal agents for these purposes. 44 C.F.R. § 62.23(g) (2021).

In this convention, the Stafford Act and relevant regulations authorize and prescribe the federal response to major disasters. *See* 42 U.S.C. § 5121 *et seq.* With particularity, the Stafford Act provides that "[i]n any major disaster, the President may . . . direct any Federal agency . . . to . . . provide accelerated Federal assistance and Federal support where necessary to save lives, prevent human suffering, or mitigate severe damage." 42 U.S.C. § 5170(a). Further,

> [T]he President . . . may provide financial assistance, and . . . direct services, to individuals and households . . . who, as a direct result of a major disaster, have necessary expenses and serious needs in cases in which the individuals and households are unable to meet such expenses or needs through other means.

42 U.S.C. § 5174(a)(1). Specifically, "[t]he President may provide financial assistance for . . . the repair of owner-occupied private residences, utilities, and residential infrastructure . . . damaged by a major disaster . . . ." 42 U.S.C. § 5174(c)(2)(A)(i). The President has delegated this disaster response authority and responsibility to FEMA. Exec. Order No. 12148, 44 Fed. Reg. 43,239 (July 20, 1979), *superseded in part by* Exec. Order No. 12919, 59 Fed. Reg. 29,525 (June 3, 1994).

Empowered by the Stafford Act, FEMA promulgated regulations setting the parameters for the provision of Individual Assistance, including assistance to individuals and households ("IA" grants). *See* 44 C.F.R. §§ 206.110–119 (2021). Notably, in accord with this regulatory framework, "[a] person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source." 42 U.S.C. § 5155(c).

2.   Subject Matter Jurisdiction

"[T]he United States may not be sued without its consent and . . . [that] consent is a prerequisite for jurisdiction."  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 205, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983)).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994).  Sovereign immunity generally makes the United States (*i.e.*, FEMA[3]) absolutely immune from suit.  In line with the mandate this doctrine imposes, FEMA contends Keita's lawsuit seeking to recover damages for its failure to honor his claim under his flood insurance policy is not subject to the limited sovereign immunity waiver under NFIA, and thus, the Court lacks jurisdiction due to sovereign immunity.  Def's Mem., at 19–20.

From a practical and important perspective, it must be understood, "[m]oreover, waivers of sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied."  *Adeleke*, 355 F.3d at 150 (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33, 112 S. Ct. 1011, 1014, 117 L.Ed.2d 181 (1992)).  "Waivers of sovereign immunity should be strictly construed in favor of the [g]overnment so as not to extend the waiver beyond what Congress intended."  *Mendez & DeJesus Grocery Store v. U.S. Dep't of Agric.*, No. 97-CV-1099, 1997 WL 250458, at *2 (S.D.N.Y. May 12, 1997) (citing *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983)).  "[T]he plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver."  *Makarova*, 201 F.3d at 113.

---

[3] FEMA is part of the Department of Homeland Security, an executive department of the United States.  As such, claims against FEMA are claims against the United States and are subject to the defense of sovereign immunity.  *See Hawaii v. Gordon*, 363 U.S. 57, 58, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1963).

Although NFIA contains a partial waiver of sovereign immunity for suits against FEMA for denial of insurance coverage under 42 U.S.C. § 4072, "courts across the country . . . have consistently held that this provision does not permit WYO program policyholders to sue FEMA when the WYO company denies their claim." *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 724 (E.D.N.Y. 2015) (collecting cases). "In other words, § 4072 extends a waiver of sovereign immunity exclusively . . . where FEMA directly denies an application, and does not extend to suits involving the actions of WYO companies, [like State Farm], in issuing, adjusting, or disallowing claims." *Id.* (internal quotation marks omitted); *Kronenberg v. Fidelity Nat'l Ins. Co.*, No. 07-CV-4877, 2008 WL 631277, at *1 (E.D. La. Mar. 5, 2008)).

The regulations implementing NFIA also support this conclusion. Pursuant to 44 C.F.R. § 62.23(d), "[a] WYO Company issuing flood insurance coverage" is responsible for "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy." Further, § 62.23(g) states that WYO companies are solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Administrator, such that *the Federal Government is not a proper party defendant in any lawsuit arising out of such policies*." (emphasis added)).

Turning to the 2007 flood claim, it was Keita's WYO company State Farm, not FEMA, that issued Keita's SFIP policy and adjusted Keita's 2007 flood loss claim. *See* Sadler Decl. ¶¶ 8, 13; Ex. 1 attached to Sadler Decl., at 12–13.[4]  It was also State Farm that issued Keita denial letters regarding additional payments Keita here contends he was owed. Inexplicably, State

---

[4] A district court may consider evidence extrinsic to the complaint in ruling on a 12(b)(1) motion. *See Makarova*, 201 F.3d at 113.

Farm's adjustment of Keita's 2007 flood claim and denial of additional coverage form the basis

of Keita's breach of contract cause of action asserted not only against State Farm but also

FEMA.[5]  Indeed, it is clear from Keita's factual allegations that FEMA is not a proper party to

that alleged breach and the limited waiver of sovereign immunity under § 4072 does not apply to

it.  *See, e.g.*, *Foster*, 128 F. Supp. 3d at 727 (finding lack of subject matter jurisdiction in suit

against FEMA because plaintiffs "purchased their flood insurance policy directly from Allstate,

filed their claim for coverage . . . with Allstate, and Allstate agents adjusted, and ultimately

denied, the plaintiffs' claim."); *Kronenberg*, 2008 WL 631277, at *1–2 (finding lack of subject

matter jurisdiction over claim against FEMA because plaintiffs "did not obtain their policy from

FEMA."); *Mertz v. FEMA, Dep't of Homeland Sec.*, No. 10-CV-260, 2011 WL 3563113, at *5

(D. Or. Feb. 14, 2011), *report and recommendation adopted sub nom. Mertz v. FEMA*, No. 10-

CV-00260, 2011 WL 3563130 (D. Or. Aug. 10, 2011) (holding the limited waiver of sovereign

immunity in 42 U.S.C. § 4072 does not apply to plaintiff's suit against FEMA because plaintiff

"purchased the Policy from [a WYO], not the Administrator [and] his claim for monies due

under the Policy is against [the WYO], not FEMA . . . .").  Since he cannot properly invoke the

limited waiver of sovereign immunity, subject matter jurisdiction over Keita's breach of contract

---

[5] The only role FEMA played with respect to Keita's 2007 flood claim was the adjudication of
Keita's appeal of State Farm's partial denial of his claim.  *See* Sadler Decl. ¶ 14.  But this
affirmance by FEMA does not change the analysis.  Courts have held that "FEMA's role in
adjudicating an appeal of a WYO company's denial of coverage does not amount to
'disallowance' sufficient to trigger § 4072's limited waiver of sovereign immunity."  *Foster*, 128
F. Supp. 3d at 726.  This is because "FEMA's disposition of an appeal under 44 C.F.R. §
62.20(b) for . . . WYO plan claims 'is defined as the insurer's final claim determination, and . . .
constitutes FEMA acting in an administrative review capacity, not as an insurer that denies a
claim.'"  *Id.* (quoting *Fowl, Inc. v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. 12-CV-283, 2012 WL
1886013, at *4 (E.D. La. May 23, 2012)); *see also Bruno v. Paulison*, No. 08-CV-0494, 2009
WL 377300, at *5–6  (D. Md. Feb. 12, 2009) (holding there was no subject matter jurisdiction
for suit against FEMA where WYO provided plaintiff's insurance and "processed [plaintiff's]
claim and finally disallowed it," and FEMA, on appeal, affirmed the disallowance).

cause of action for his 2007 flood claim against FEMA is wanting.  Therefore, this claim is

dismissed pursuant to Rule 12(b)(1).[6]

        a.   2012 Flood Claims

"The [Stafford] Act does not contain a separate waiver of sovereign immunity."

*Konashenko v. FEMA*, No. 12-CV-3034, 2014 WL 1761346, at *4 (E.D.N.Y. Apr. 29, 2014).  "It

has a discretionary function exception with the same meaning as an exception set forth in the

Federal Tort Claims Act, such that courts often look to FTCA exception jurisprudence in

construing Stafford Act exceptions."  *Id.* (citing 42 U.S.C. § 5148 and *St. Tammany Parish ex*

*rel. Davis v. FEMA*, 556 F.3d 307, 319 (5th Cir. 2009)).  Specifically, section 5148 of the

Stafford Act provides that:

> The Federal Government shall not be liable for any claim based upon the exercise
>
> or performance of or the failure to exercise or perform a discretionary function or
>
> duty on the part of a Federal agency or an employee of the Federal Government in
>
> carrying out the provisions of this chapter.

---

[6] Without deciding, there appear from the record properly considered on this motion, that there
are multiple other grounds fatal to plaintiff's claim for his alleged 2007 flood property loss.  In
addition, there may be other grounds to establish sovereign immunity.  Specifically, even if
FEMA were the proper defendant in this case, NFIA requires that claims arising out of the
statute be brought "within one year after the date of mailing of notice of disallowance or partial
disallowance."  42 U.S.C. § 4072; *see Melanson v. U.S. Forensic, LLC*, 183 F. Supp. 3d 376, 396
(E.D.N.Y. 2016).  FEMA provided a copy of the partial denial from State Farm, dated May 12,
2007.  *See* Ex. A attached to Sadler Decl., Dkt. 64, at 12–13.  Additionally, FEMA issued its
affirmance of State Farm's adjustment of Keita's claim on January 11, 2010.  Sadler Decl. ¶ 14.
Notwithstanding, plaintiff filed the instant lawsuit in 2017, ten years after State Farm's partial
denial was first issued to him and seven years after FEMA upheld State Farm's decision.  Keita's
claim regarding his 2007 flood claim would, therefore, be time-barred under 42 U.S.C. § 4072.
*See, e.g.*, *Melanson*, 183 F.Supp. 3d at 395–96 (finding an insured's breach of contract cause of
action was time barred because the action was commenced more than a year followisng receipt
of notice of his insurance company's partial denial of his claim).

Ultimately, the language as well as the legislative history of the Stafford Act "clearly preclude discretionary actions taken under the Stafford Act from judicial review." *Konashenko*, 2014 WL 1761346, at *4. Applying this understanding, FEMA argues that Keita's claim, which can be best divined as charging that FEMA violated the Stafford Act in determining that he was ineligible for IA grants, Am. Compl. ¶ 6, is barred by the doctrine of sovereign immunity.

Importantly, though, not every action taken by FEMA under the authority of the Stafford Act is instantly shielded by sovereign immunity. "To determine whether an action is a discretionary function shielded from judicial review by the Stafford Act, 'courts have looked to the two-prong test set forth by the Supreme Court in *United States v. Gaubert*, 449 U.S. 315 (1991).'" *Dubow v. FEMA*, No. 16-CV-3717, 2018 WL 472816, at *6 (E.D.N.Y. Jan. 18, 2018) (quoting *Konashenko*, 2014 WL 1761346, at *4). This test requires that (1) the "act 'involve an element of judgment or choice'" and (2) "the judgment . . . be grounded in considerations of public policy." *In re World Trade Ctr. Disaster Site Lit.*, 521 F.3d 169, 195 (2d Cir. 2008) (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000)).

With respect to this aspect of Keita's claims against FEMA, the granting of IA grants and relevant eligibility determinations, *see* 44 C.F.R. § 206.110 (2021), are fairly characterized as agency actions committed to FEMA's discretion, under delegation from the President. *See, e.g.*, *Dubow*, 2018 WL 472816, at *6 (finding that "the FEMA decision to reallocate the disaster funds . . . have been a discretionary act in disaster relief efforts . . .."); *Konashenko*, 2014 WL 1761346, at *5 ("finding that FEMA's denial of aid to [plaintiff] was a discretionary decision . . .."). Indeed, numerous courts have held that distribution of disaster grants is a discretionary act grounded in social and economic public policy which may not be second guessed by the courts. *See, e.g.*, *Dubow*, 2018 WL 472816, at *6; *Konashenko*, 2014 WL 1761346, at *5; *City of San*

*Bruno v. FEMA*, 181 F. Supp. 2d 1010, 1014–15 (N.D. Cal. 2001) ("Distributing limited funds is inherently a discretionary responsibility.").

But this does not end the Court's inquiry because plaintiff's amended complaint suggests that FEMA's decision was tainted by unconstitutional discrimination.  *See* Am. Compl. at ¶ 6. Surely, whatever discretion has been vested in FEMA to deny or award IA grants, it does not extend so far as to permit those decisions to be based on an unconstitutional motivation.  Even where the Court's jurisdiction on such decisionmaking is limited by statute, "[i]t is well established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary."  *Wong v. Warden, FCI Waybrook*, 171 F.3d 148, 149 (2d Cir. 1999) (per curiam) (citing *Webster v. Doe*, 486 U.S. 592, 603–05, 108 S.Ct. 2047, 2053–55, 100 L.Ed.2d 632 (1988)).

Not surprisingly, the Stafford Act expressly requires "FEMA to implement programs in an equitable and impartial manner and proscribes discrimination in disbursements."  *Laday v. Ramada Plaza Hotel Laguardia*, No. 07-CV-450, 2007 WL 526613, at *2 (E.D.N.Y. Feb. 13, 2007) ; *see also* 42 U.S.C. § 5151(a) ("[R]egulations [for federal assistance for disaster or emergency relief] shall include provisions for insuring that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status.").  Harmoniously, "this provision imposes an affirmative duty on FEMA to provide assistance without discrimination and provides an aggrieved individual with a right of action against FEMA."  *Laday*, 2007 WL 526613, at *2. Obviously, in short, FEMA has no discretion to discriminate.  Equally obvious, "[h]owever, the

litigant bears the burden of establishing that FEMA, in administering a disaster assistance program, has somehow impermissibly discriminated against [him]." *Id.*

Here, plaintiff merely alleges discrimination without providing any factual allegations as to the basis for any such claim. *See* Am. Compl. at ¶ 6. Keita has not pleaded, beyond alleging a denial of benefits, what acts or omissions constituted discrimination, and how FEMA has impermissibly discriminated against him. *See Laday*, 2007 WL 526613, at *2. As a consequence, Keita's request that the Court review and reverse FEMA's denial of his IA grant eligibility is beyond the Court's subject matter jurisdiction. This claim is dismissed as well.

3. The Hurricane NFIP claim

Construing his complaint liberally, the Court finds that Keita may also have alleged, though it is difficult to discern, an additional claim against FEMA for failure to meet its obligations under NFIP. *See* Am. Compl. at ¶ 6. Specifically, Keita alleges "FEMA . . . did not pay my claim for Hurricane Sandy when the policies had not expire (sic)" and that he "never received any cancellation notice as required by Federal Law as NFIP Insured Dwelling." *Id.* In support of this claim, as previewed earlier, Keita attaches to his complaint a letter dated February 2016, drafted by his prior attorneys to FEMA challenging what is apparently a previously received claim determination for damages to the Seaview property following Hurricane Sandy. *See* Ex. A attached to Am. Compl., at 3. The letter asserts that FEMA significantly underpaid for losses resulting from Sandy and that the insurer has failed to honor its obligations under the policy. *Id.*

In addition, as was also noted earlier, Keita has attached to his complaint a letter from State Farm, dated February 1, 2012, prior to Hurricane Sandy, which states that State Farm is in the process of transferring all NFIP claims to NFIP Direct, the federal government's flood

insurance program, and that all NFIP claim activity will now be handled by NFIP Direct.  *See* Ex. B attached to Am. Compl., at 4.  Based on this letter, it appears that Keita's challenge to his 2012 Hurricane Sandy claim originates directly from FEMA and not the WYO.  As such, the Court cannot determine at this stage, whether FEMA is not a proper party to this suit under 44 C.F.R. § 62.23(g).  *See Foster*, 128 F. Supp. 3d at 726.  It is also unclear, based on this letter, when the denial of his Hurricane Sandy claim occurred and whether the claim is time-barred under 42 U.S.C. § 4072.  *See, e.g.*, *Melanson v. U.S. Forensic, LLC,* 183 F.Supp. 3d 376, 396 (E.D.N.Y. 2016) ("[T]he SFIP establishes a one-year statute of limitations for policyholders to commence an action, running from the date on which the insured received a written denial of his claim.").

Aside from these letters, and in step with the vague, ambiguous and, at times, incomprehensible nature of his pleadings, Keita's complaint provides no additional information regarding this claim.  Indeed, perhaps also causing puzzlement to it, FEMA has not addressed this claim in its briefing.  The Second Circuit, however, stated in its remand order that Keita's "amended complaint and attached exhibits was sufficient for FEMA . . . to file answers asserting any defenses for their alleged failure to fully pay [Keita's] insurance *claims*."  Dkt. 41 (emphasis added).  Although the Court still has serious doubts as to whether these allegations have plausibly stated a claim for relief, given the mandate of the Circuit, and propped up by the special solicitude afforded to *pro se* litigants, Keita's claim against FEMA for violating NFIP and in failing to pay his 2012 insurance claim must be allowed to proceed.  For now, the motion to dismiss is denied and FEMA is directed to comply with the Circuit's mandate that it file an answer.

4.  Leave to Amend

Although, generally, a district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend at least once, denial of leave is proper where, construing his pleadings and motion papers most liberally in his favor, leave to replead would be futile. *Shibeshi v. City Univ. of N.Y.*, 531 F. App'x. 135, 136 (2d Cir. 2013).  Here, given that Keita has already amended the complaint once before, and that any attempted amendment to the denied claims would be futile, further leave to amend the dismissed claims shall not be granted.  *See Dluhos v. Floating and Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (leave to amend should be denied for even *pro se* litigants if there is repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment).

Conclusion[7]

For the foregoing reasons, FEMA's motion to dismiss is granted in part and denied in part.  Keita's 2007 flood insurance claim and claim pursuant to the Stafford Act against FEMA are dismissed with prejudice.  The remaining claim against FEMA for violating NFIP and failing to pay his 2012 insurance claim for the Seaview property may proceed.

---

[7] Keita has also moved for a writ of mandamus pursuant to 28 U.S.C. § 1361 against FEMA. Dkt. 84.  "Mandamus is an extraordinary remedy, available to 'a plaintiff only if the defendant owes him a clear nondiscretionary duty.'" *Cheney v. United States Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 394, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (citing *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)).  Plaintiff has not demonstrated that FEMA owes him a clear nondiscretionary duty, and has not alleged facts to avail himself of the extraordinary remedy of mandamus.  His motion for the writ is, accordingly, denied.  *See, e.g.*, *Konashenko*, 2014 WL 1761346, at *6 (E.D.N.Y. 2014) (denying invocation of 28 U.S.C. § 1361 as an alternative basis for jurisdiction because plaintiff has not alleged or implied any nondiscretionary duty owed by FEMA).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The parties are directed to contact Magistrate Judge Steven Tiscione for further pretrial management of this case.

So Ordered.

Dated: Brooklyn, New York
          July 26, 2021

                                        /s/ ENV
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge